IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 6:19cr26 |
| | ) | |
| ALEXANDER TIMOTHY CROSS | ) | |
| | ) | |
| Defendant. | ) | |

## **ALEXANDER CROSS' SENTENCING MEMORANDUM**

More than a century ago, the Supreme Court recognized the adverse consequences to inmates' mental health posed by prolonged detention in conditions akin to solitary confinement. *In re Medley,* 134 U.S. 160, 168 (1890). Citing the Supreme Court in its *Medley* case, the Fourth Circuit recently noted that "experience demonstrated that, when placed in isolation, [a] considerable number of prisoners fell, after even a short confinement, into a semi-fatuous condition, from which it was next to impossible to arouse them, and others became violently insane; others still, committed suicide; while those who stood the ordeal better were generally not reformed, and in most cases did not recover sufficient mental activity to be of any subsequent service to the community." *Porter v. Clarke,* 923 F.3d 348, 355 (4th Cir. 2019) (internal quotes and citations omitted). Notwithstanding that scholars have conducted dozens of studies on the psychological and emotional effects of solitary and segregated confinement, the leading survey of the literature regarding such confinement in the ensuing century after *Medley* has found that

1

"there is *not a single published study* of solitary or supermax-like confinement in which nonvoluntary confinement lasted for longer than 10 days, where participants were unable to terminate their isolation at will, *that failed to result in negative psychological effects.*" *Id.* at 356 (emphasis in original; internal citations omitted).

███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████

Mr. Cross has been in custody for possessing firearms by a prohibited person since September 25, 2019 – 19 months by the time of his sentencing hearing not accounting for additional good time credit.  Considering (1) ██████████████

█████████████████████████████████████████

███████████████████████████████████████

--------

[1] ███████████████████████████████████████████
█



, a sentence of time served is sufficient but not greater than necessary to address the goals of sentencing in Mr. Cross' case.

**Guidelines Calculations**

The Presentence Investigation Report ("PSR") concludes that Mr. Cross has a total offense level of 19 and a criminal history category of I, yielding a guideline range of 30 to 37 months of imprisonment. As discussed further below, several guideline provisions support a sentence of time served in Mr. Cross' case.



████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

As discussed above, it is well-documented that solitary confinement

negatively affects almost all prisoners subject to its isolating conditions. ████

████████████████████████████████████████████████████

██████████████████████████████████████ *See* Melanie Campbell,

*Vulnerable and Inadequately Protected: Solitary Confinement, Individuals with*

*Mental Illness, and the Laws that Fail to Protect,* 45 Hofstra Law Review 263, 275

(2016) (citing James Gilligan & Bandy Lee, *Report to the New York City Board of*

*Correction* 3 (Sept. 5, 2013)). ████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████ ██ ████████████████████████████

████████████████████████████████████████████



### U.S.S.G. § 5H1.4 Physical Condition

U.S.S.G. § 5H1.4 provides that "physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." Further, "an extraordinary physical impairment may be a reason to depart downward." *Id.*





It is imperative that Mr. Cross receive therapeutic treatment to allow him to adapt to his condition in a safe environment. ███████████████████████████ ███████████████████, and this section supports a downward departure to time served in Mr. Cross' case.

**Section 3553(a) Factors:**

**1. Nature and Circumstances of the Offense**

The Presentence Report summarizes the basic facts of the offense, which are that on September 25, 2019, Mr. Cross was found in possession of four firearms and ammunition.  Mr. Cross was prohibited from possessing firearms because he had previously been committed to a mental institution after having been found unrestorably incompetent to stand trial in 2016 related to state charges in Amelia County.

Though the ███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████████████ ███████████████████████████████████ ██████████████ Either way, it is abundantly clear that Mr. Cross no longer poses the threat that likely justified this federal prosecution in the first place.

████████████████████████████████████ ████████████████████████████████ █████████████████████████████████████ █████████████████████████████████████ ██████████████████████████████████

**2. Characteristics of Mr. Cross**

Alexander Cross was born and raised in Annapolis, Maryland.  He has one sister, who is three years younger than himself.  He was raised by both of his parents until they divorced when he was 15 years old.   Mr. Cross grew up in a middle class, suburban neighborhood, was well supported as a child, and did not suffer from any abuse or neglect.  However,

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

Upon his release from custody, Mr. Cross plans to live with his mother and sister in the Annapolis, Maryland area where he grew up.  His mother has already researched services available to address Mr. Cross' rehabilitative needs.  Though Mr. Cross hopes to regain his independence at some point in the future, he recognizes that his drastic change of circumstances does not allow him the same level of independence he experienced before his arrest, and he is thankful for his family's support.

**3.  Punishment**

Possession of firearms by a person previously committed to a mental institution is a serious offense; however, the nature of the offense – that Mr. Cross is prohibited from possessing firearms specifically because he is a person who has struggled with mental illness for many years – itself suggests that ensuring that Mr. Cross receives necessary medical and rehabilitative treatment is a more important sentencing concern than punishment. Mr. Cross has already been in custody for well over a year and a half. ████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████

### 4. Deterrence

The Sentencing Commission has noted there is no evidence that increases in sentences deter crime. "Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime and Justice: A Review of Research 28-29 (2006). Instead, research has generally shown that "increases in the *certainty* of punishment, as opposed to the *severity* of punishment, are more likely to produce deterrent benefits." *See* Valerie Wright, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, The Sentencing Project (Nov. 2010) at 1 (noting a study that found that longer prison sentences achieved only a three percent reduction in recidivism). The Department of Justice acknowledges the facts that the certainty of being caught is a vastly more powerful deterrent to crime and that the severity of punishment is an ineffective deterrent to crime. National Institute of Justice, *Five Things About Deterrence*, (June 6, 2016). Therefore, the fact that Mr. Cross is being sentenced at all will achieve the same amount of general deterrence, regardless of the length of his sentence.

### 5.  Protection of the Public

Mr. Cross does not pose a danger to the community.  A sentence of time served followed by a term of supervised release will protect the public.  Mr. Cross'

personal circumstances have changed dramatically since the time of his arrest in September of 2019. ██████████████████████████████████████.  To the extent that the public needs to be protected in any way from Mr. Cross, the most effective way to ensure both his and the community's safety is ████████████ ██████████████████████████████████████████████

This can be best achieved through specific and directed conditions of supervised release and an additional period of incarceration is not warranted to address this factor.

## 6. Rehabilitation

18 U.S.C. § 3553(a)(2)(D) requires the court to consider the need for the sentence to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. However, imprisonment is "not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582(a). ██████████████████████ ████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████ ████████████████████████████ ████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████

██████████████████████████████████████████

██████████████████████. This factor supports a sentence of time

served.

## 7. Unwarranted Disparity

A sentence of time served constitutes a below guideline sentence, but it will

not create an *unwarranted* sentencing disparity because it considers Mr. Cross'

specific circumstances. Specifically, it takes into account ████████████████

████████████████████████████████████████████

██████████████████ This sentencing factor does not support a sentence

within the guideline range, particularly when considering that the vast majority of

the people sentenced under the same sentencing guideline as in this case are people

who have already been convicted of a felony.  Individuals who have been prohibited

from possessing firearms because they have already been convicted of serious

crimes should surely face a longer sentence than those like Mr. Cross who have

been prohibited from possessing firearms because they are ill and were committed

to a hospital for care for their illness.  The guideline itself creates an unwarranted

disparity by treating differently situated defendants similarly.

## <u>CONCLUSION</u>

Mr. Cross has been punished enough.  Justice must be tempered with mercy,

and it is just and merciful in this case to impose a sentence of time served.  Any

additional prison sentence is unnecessarily cruel, does not serve the ends of justice,

and is simply greater than necessary.

Respectfully submitted,

ALEXANDER CROSS
By Counsel

Counsel:

s/Andrea Harris
Andrea Harris (VSB No. 37764)
Assistant Federal Public Defender
Office of the Federal Public Defender
401 E. Market St, Suite 106
Charlottesville, VA 22902
Tel (434) 220-3380

## CERTIFICATE OF SERVICE

I certify that on April 19, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to: counsel of record; and I certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: none.

s/Andrea Harris
Asst. Federal Public Defender